**WEST CONSHOHOCKEN RESTAURANT ASSOCIATES, INC., Appellee,**

**v.**

**James B. FLANIGAN, Appellant.**

Superior Court of Pennsylvania.

Argued April 27, 1999.
Filed Aug. 31, 1999.

John P. McShea, III, Philadelphia, for appellant.

Gregory J. Dean, King of Prussia, for appellee.

Before DEL SOLE, MONTEMURO * and BECK, JJ.

DEL SOLE, J.:

¶ 1 Appellant appeals from a judgment entered after a bench trial in which the trial court found him liable for damages stemming from his breach of an agreement for the sale of a restaurant.

¶ 2 Appellant raises two issues for our review:

1. Whether the trial court, by admitting parol evidence of an oral agreement to modify the terms of a contemporaneous, unambiguous, integrated written agreement, absent of evidence of fraud, accident or mutual mistake, particularly when the parol evidence is an *ex parte* communication in violation of Rule 4.2 of Rules of Professional Conduct, abused its discretion or committed an error of law.

2. Whether the trial court, by awarding actual damages contrary to an evidentiary ruling at trial, and contrary to the parties' written agreement that liquidated damages would be the exclusive remedy under the circumstances in the instant case, abused its discretion or committed an error of law.

Appellant's Brief at 3.

¶ 3 The facts in this case establish that Appellant entered into an agreement with Appellee ("WCRA") to buy WCRA's restaurant. During the negotiations for the restaurant, Appellant proposed 19 changes to WCRA's existing lease on the property. Appellant made it clear that the changes in the lease were a condition precedent to his purchase of the restaurant. WCRA's landlord rejected the proposed changes. Subsequently, Appellant met privately with Butera, WCRA's counsel, and ex-

pressed his desire to enter into an agreement notwithstanding the absence of his proposed lease modifications. Appellant and Butera drew up the agreement of sale which was signed by the parties.

¶ 4 Approximately one month later, however, Appellant sent a letter to WCRA's landlord, demanding the 19 changes in the existing lease. The landlord rejected the demand. Appellant then send a letter to WCRA attempting to terminate the agreement of sale.

¶ 5 WCRA filed suit for breach of contract and won, receiving damages which included loss of bargain, costs, expenses and attorney fees.

### Parol Evidence

¶ 6 Appellant objects to the admission of Butera's testimony about the conversation between Butera and Appellant on the day the agreement was drafted. Butera testified that the parties inadvertently failed to omit Paragraph 5(e) from the agreement. Paragraph 5(e) provided:

*Lease.* Buyer [Appellant] shall receive the written agreement of the Landlord to consent to the assignment of the Lease to Buyer and to the modification of the Lease as required by Buyer.

Agreement of Sale, 08/10/94 at 6.

¶ 7 Butera testified that because he and Appellant "patched up" the agreement "in haste", they inadvertently left in this paragraph, even though it did not reflect the terms they had agreed upon.

¶ 8 The trial court credited Butera's testimony and found that the terms in Paragraph 5(e) were "waived" because it was mistakenly included in the agreement. Thus, because Appellant's actions were no longer justifiable under Paragraph 5(e); the trial court found Appellant in breach of the contract. Appellant now claims that Butera's testimony was improperly-admitted parol evidence.

* Retired Justice assigned to the Superior Court.

Although a writing may appear to be complete on its face, parol evidence is admissible to vary the contents of the writing when there is proof that the writing does not reflect the true agreement of the parties. For example, if the terms of the contract are ambiguous, parol evidence may be introduced to aid in the interpretation of the agreement.... Likewise, if fraud, accident or mistake is alleged, extrinsic evidence is admissible to vary or contradict the terms of the written agreement.

*Espenshade v. Espenshade*, 1999 PA Super 108, ¶ 8, 729 A.2d 1239.

■■ ¶ 9 In this case, the trial court found the disputed agreement term to be ambiguous, and, in the alternative, a mistake of the parties; thus, it allowed Butera to offer extrinsic evidence about the parties' agreement. We find the testimony to be properly admitted, but we employ a different rationale than the trial court.

■■ ¶ 10 An ambiguity exists when a contract provision is reasonably susceptible to more than one meaning. *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 629 (Pa.Super.1998). In this case, neither party is asserting the existence of more than one meaning to the paragraph. Rather, WCRA is asserting the paragraph was not meant to be part of the agreement, while Appellant asserts the contrary. Thus, the trial court improperly admitted Butera's testimony for the purpose of interpreting an ambiguity in the agreement.

■■ ¶ 11 However, extrinsic evidence may also be admitted to show that a mistake has been made and the contract does not reflect the true agreement of the parties. *Northwest Sav. Assn. v. Distler*, 354 Pa.Super. 187, 511 A.2d 824, 826 (1986). WCRA's argument is essentially that Paragraph 5(e) was mistakenly included in the agreement despite the parties' agreement to the contrary. Thus, as evidence of a mutual mistake, Butera's testimony was admissible. We note that Appellant denies the existence of any mutual

mistake in the contract; however, a denial by one party that a mistake was made does not in itself prevent a finding of mutual mistake. *Central Transportation, Inc. v. Bd. of Assessment Appeals of Cambria County*, 490 Pa. 486, 417 A.2d 144, 148 (1980)(citing *Bollinger v. Central Pennsylvania Quarry Stripping and Construction Co.*, 425 Pa. 430, 229 A.2d 741, 742 (1967)).

■■■■ ¶ 12 Evidence of mistake must be clear and convincing. *Id.* at 147. Appellant asserts that the trial court improperly treated and evaluated Appellant's witnesses, resulting in a finding of mistake where the evidence was insufficient. As Pennsylvania courts have often stated: "[t]rial courts are in the best position both to find the facts, and also to determine their weight and credibility." *Commonwealth v. 5043 Anderson Road*, 556 Pa. 335, 728 A.2d 907, 909 (1999). In this case, the trial court credited Butera's testimony, and discredited Appellant's testimony. After hearing all the evidence, the trial court found that mistake was the only logical explanation for the inclusion of Paragraph 5(e) in the agreement. Trial Court Opinion, 12/14/98, at 6. We will not disturb the trial court's finding that the evidence of mistake was sufficiently clear.

■■■ ¶ 13 Appellant alternatively asserts that Butera's testimony should have been excluded on the basis that the conversation between Butera and Appellant was held in alleged violation of the Rules of Professional Conduct for attorneys in Pennsylvania. Appellant cites to Rule 4.2, which prohibits attorneys from communication with parties whom the attorney knows to be represented by counsel. Appellant asserts that because Butera, WCRA's attorney, knew Appellant was represented by counsel, Butera's testimony should be excluded.

¶ 14 The Rules of Professional Conduct are not rules of evidence. They do not have the force of substantive law but are to be utilized in disciplinary proceedings.

*In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215, 221 (1984). Thus, we will not disturb the trial court's ruling that Butera's alleged violation of Rule 4.2 did not act as a bar to his testimony.

### Damages

¶ 15 Appellant argues that the trial court erred in awarding damages above the amount specified in the agreement of sale. The agreement contained two provisions related to damages:

17. *Expenses Resulting from Default.* If litigation arises as the result of either party's default hereunder, as a part of any judgment to be rendered, the court, board of arbitration, or other entity resolving the dispute may award to the non-defaulting party all costs, including attorney's fees, reasonably incurred and related to such default.

20. *Default by Buyer.* If Buyer defaults in the performance of any of its obligations under this Agreement and Closing does not occur as a result thereof, the Deposit shall be given to Seller as liquidated damages in lieu of any other remedy, this Agreement shall become void, and the rights and obligations of the parties shall terminate absolutely hereunder.

Agreement of Sale, 08/10/94 at 13, 14.

¶ 16 The deposit described in Paragraph 20 was a principal amount of $30,000 in an escrow account held by Butera. Butera was authorized to release the deposit only upon receipt of written instructions signed by Appellant and WCRA or the entry of a court order directing the release. Agreement of Sale, 08/10/94 at 2.

¶ 17 The trial court awarded to WCRA damages including the broker's fee for WCRA's resale of the restaurant, attorney fees for the resale process, witness fees for Butera to appear in this litigation, attorney fees for this litigation, amounts expended to resuscitate interest in the restaurant, loss of bargain damages, and the liquidated damages deposit. Appellant asserts that this award was error; and that the maximum recoverable amount should be the liquidated damages plus costs of litigation. We agree.

¶ 18 The liquidated damages clause was part of the bargained-for exchange of the parties when they entered into the agreement. Paragraph 20 specifically limits damages caused by Buyer's default. Because WCRA was required to obtain a court order to receive the deposit, its costs related to that part of the litigation are also recoverable under Paragraph 17 of the agreement. However, WCRA's costs related to the resale of the restaurant, including loss of bargain, are not recoverable. Additionally, any portion of attorney fees or litigation costs not directly attributable to WCRA's efforts to obtain the release of the deposit are not recoverable. This limitation includes litigation costs related to WCRA's attempt to recover damages for loss of bargain and other damages beyond the liquidated damages amount.

¶ 19 Thus, while we will not disturb the court's finding that Appellant breached the agreement, we vacate the judgment and remand for a calculation by the trial court of the amount of attorney fees and litigation costs which were incurred by WCRA solely for obtaining a court order on the matter of Appellant's breach of contract. Costs and fees related to subsequent transactions and proof of other damages are not to be included in the amount of damages. The final damage amount to be awarded to WCRA; therefore, will consist of liquidated damages plus litigation costs and fees related solely to obtaining the liquidated damages.

¶ 20 Judgment vacated. Case remanded. Jurisdiction relinquished.

¶ 21 Judge BECK concurs in the result.