J-A15045-17

2017 PA Super 308

| | | |
|---|---|---|
| ROBERTA BRESLIN, EXECUTRIX OF THE ESTATE OF VINCENT BRESLIN, DECEASED, | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| MOUNTAIN VIEW NURSING HOME, INC., | : : | No. 1961 MDA 2016 |

Appeal from the Order entered October 21, 2016
in the Court of Common Pleas of Lackawanna County,
Civil Division, No(s): 2015-05015

BEFORE: MOULTON, SOLANO and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:              **FILED SEPTEMBER 28, 2017**

Roberta Breslin ("Breslin"), executrix of the Estate of Vincent Breslin ("Vincent"), deceased, appeals from the Order sustaining the Preliminary Objections filed by Mountain View Nursing Home, Inc. ("MVNH"), and dismissing Breslin's claims, with prejudice. We affirm in part, reverse in part, and remand for further proceedings.

From October 9, 2013, to October 16, 2014, Vincent was a patient at MVNH.[1] During the year in which he was a patient at the facility, Vincent developed multiple Grade III and/or Grade IV pressure ulcers in his ischial areas, sacral area, right foot and left foot. On December 1, 2015, Breslin

---

[1] The Amended Complaint is silent as to when Vincent died. However, Breslin does not allege that Vincent died while he was a patient at MVNH.

filed a Complaint against MVNH, asserting claims sounding in corporate negligence and vicarious liability. On February 16, 2016, MVNH filed Preliminary Objections to the Complaint in the nature of a demurrer. On May 20, 2016, the trial court sustained the Preliminary Objections based on lack of specificity, and directed Breslin to file an Amended Complaint. On June 10, 2016, Breslin filed an Amended Complaint. On June 23, 2016, MVNH filed Preliminary Objections in the nature of a demurrer to the Amended Complaint. On October 25, 2016, the trial court sustained the Preliminary Objections, and dismissed the Amended Complaint with prejudice. Breslin filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

The issues that Breslin raises on appeal for our review can be summarized as follows:

1. Whether the trial court erred when it sustained MVNH's Preliminary Objection to Breslin's claim for corporate negligence?

2. Whether the trial court erred when it sustained MVNH's Preliminary Objection to Breslin's claim for vicarious liability?

3. Whether the trial court erred when it sustained MVNH's Preliminary Objection alleging insufficient specificity regarding agency and negligence?

4. Whether the trial court erred when it sustained MVNH's Preliminary Objection regarding scandalous and impertinent matter in the Amended Complaint?

5. Whether the trial court erred when it sustained MVNH's Preliminary Objection to Breslin's claim for punitive damages?

*See* Brief for Appellant at 2-3 (issues renumbered for ease of disposition).

> Our review of a trial court's sustaining of preliminary objections in the nature of a demurrer is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.
>
> All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for [the purpose of this review]. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.
>
> Regarding a demurrer, this Court has held:
>
>> A demurrer is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. A demurrer by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint.
>
> Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a demurrer is properly sustained.

*Lerner v. Lerner*, 954 A.2d 1229, 1234-35 (Pa. Super. 2008) (internal citations omitted).

In her first issue, Breslin contends that the trial court erred by sustaining MVNH's preliminary objection to Breslin's claim for corporate negligence. Brief for Appellant at 9. Breslin asserts that "the duties alleged

by [Breslin] in the Amended Complaint are legally recognizable non-delegable duties applicable to [MVNH]." *Id*. Breslin claims that the trial court erroneously determined that the allegations of corporate negligence set forth in the Amended Complaint are beyond the non-delegable duties applicable to a corporate entity as set forth in ***Thompson v. Nason Hosp.***, 591 A.2d 703 (Pa. 1991), and extended to nursing homes in ***Scampone v. Highland Park Care Ctr., LLC***, 57 A.3d 582, 596 (Pa. 2012). Brief for Appellant at 10. Breslin argues that the allegations in the Amended Complaint "are built on direct quotes from the Supreme Court's Opinion in ***Thompson***." *Id*. at 9, 10. In support, Breslin cites to the allegations contained in paragraphs 47-50 of the Amended Complaint, wherein she asserts the following:

> 47. At all relevant times, [MVNH] had a non-delegable duty to Vincent [] to use reasonable care in the maintenance of safe and adequate facilities and equipment;
>
> 48. At all relevant times, [MVNH] had a non-delegable duty to Vincent [] to select and retain competent and qualified medical personnel;
>
> 49. At all relevant times, [MVNH] had a non-delegable duty to Vincent [] to oversee all persons practicing medicine within its walls;
>
> 50. At all relevant times, [MVNH] had a non-delegable duty to Vincent [] to formulate, adopt and enforce adequate rules and policies to ensure quality patient care.

*Id*. at 10 (quoting Amended Complaint at ¶¶ 47-50). Breslin also points to the allegations in the Amended Complaint that MVNH had non-delegable

- 4 -

duties to Vincent to (1) "ensure his safety and well-being while he was admitted as a patient at [MVNH;]" (2) "exercise reasonable care and skill in the performance of its duties[;]" (3) "uphold the proper standard of care[;]" and (4) "use that degree of professional skill and care customarily exercised by nursing homes in its professional community[,]" and contends that these duties constitute further non-delegable duties identified by the **Thompson** Court. Brief for Appellant at 10-11 (quoting from the Amended Complaint at ¶¶ 43, 45, 46). Finally, Breslin claims that, even if some of the duties alleged in the Amended Complaint are not recognizable non-delegable duties, the trial court erred by dismissing all of the alleged duties. Brief for Appellant at 11.

In **Thompson**, the Supreme Court adopted the theory of corporate liability, as it relates to hospitals, by holding that the defendant hospital owed a non-delegable duty of care toward a patient of a doctor with staff privileges at the hospital. **Thompson**, 591 A.2d at 707. Specifically, the **Thompson** Court

> adopted an ostensibly novel theory of liability – "corporate negligence" -- under which a hospital operating primarily on a fee-for-service basis can be held liable if it breaches the non-delegable duty of care owed directly to the patient to ensure "the patient's safety and well-being" while at the hospital. The Court surveyed the jurisprudence of other states to identify "four general areas" into which a hospital's responsibilities to its patients could be classified: (1) duties to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) duties to select and retain competent physicians; (3) duties to oversee all persons who practice medicine within the

- 5 -

> hospital's walls; and (4) duties to formulate, adopt, and enforce adequate rules and policies to ensure quality patient care.

*Scampone*, 57 A.3d at 601. Additionally, the *Thompson* Court ruled that the hospital owed a non-delegable duty directly to the patient to observe, supervise, or control his/her treatment approved by multiple physicians; to apply and enforce its consultation and monitoring procedures; and to ensure the patient's safety and well-being while at the hospital. *See Thompson*, 591 A.2d at 705, 707.

In *Scampone*, our Supreme Court rejected the argument that nursing homes and related entities should be categorically immune or exempt from direct liability claims, such as corporate negligence. *See Scampone*, 57 A.3d at 600. Instead, the *Scampone* Court held that "a nursing home and affiliated entities are subject to potential direct liability for negligence, where the requisite resident-entity relationship exists to establish that the entity owes the resident a duty of care...." *Id*. at 584. The Court further ruled that, to determine the existence of such a duty, a trial court must undertake the five-prong analysis set forth in *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000) by considering: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Scampone*, 57 A.3d at 600; *see also Sokolsky v. Eidelman*, 93 A.3d 858, 870 (Pa. Super. 2014) (concluding *Scampone* requires a trial court to

analyze the five ***Althaus*** factors in order to extend corporate liability to a skilled nursing facility).[2] None of the five ***Althaus*** factors is dispositive, and a court may find a duty where the balance of these factors weighs in favor of placing such a burden on a defendant. ***See Dittman v. UPMC***, 154 A.3d 318, 323 (Pa. Super. 2017).

> In this case, the trial court determined that
>
> [t]he specific allegations concerning the corporate duties which [Breslin] alleges were the responsibility of [MVNH], such as "placing profits over adequate patient care" are in fact not recognizable non-delegable duties applicable to a corporate entity such as [MVNH] under ***Thompson*** [], nor does the doctrine of *res ipsa loquitor* support said allegations.

Trial Court Opinion, 10/25/16, at 2. On this basis, the trial court determined

---

[2] As ***Thompson*** was decided prior to ***Althaus***, the ***Thompson*** Court did not have the benefit of the ***Althaus*** factors. Instead, in adopting the theory of corporate negligence as related to hospitals, the ***Thompson*** Court relied on the Restatement (Second) of Torts § 323, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

that Breslin's claim for corporate negligence was legally insufficient. *Id*.[3]

Notably, although the trial court acknowledged its need to consider the *Althaus* factors, and indeed specifically identified those factors, it nevertheless failed to analyze or apply those factors to the facts alleged in the Amended Complaint. *See* Trial Court Opinion, 10/25/16, at 2.

We conclude that application of the *Althaus* factors to the facts averred in the Amended Complaint weighs in favor of imposing on MVNH the non-delegable duties identified by the *Thompson* Court. Here, under the first *Althaus* factor, we conclude that there was a special relationship between MVNH and Vincent, which began when Vincent began residing as a patient at MVNH. *See Althaus*, 756 A.2d at 1169 (holding that duty is predicated upon the relationship existing between the parties at the relevant time). Breslin alleges that Vincent was "sick, elderly and frail," and that he "relied completely and exclusively on [MVNH] to provide all of his medical care, daily care and personal needs." *See* Amended Complaint, at ¶¶ 8, 19. Breslin further alleges that MVNH exercised compete and exclusive control over Vincent's medical care during his stay as a patient at MVNH. *See* Amended Complaint, at ¶¶ 19, 20. These facts create the type of relationship between MVNH and Vincent to support the imposition of a duty

---

[3] Contrary to the trial court's determination otherwise, our review discloses that Breslin's allegations of corporate negligence, as set forth in Count I of the Amended Complaint, bear striking resemblance to the non-delegable duties identified by the *Thompson* Court. *See* Amended Complaint, ¶¶ 46-54(a)-(x).

of care. Thus, the first **Althaus** factor weighs in favor of imposing the non-delegable duties on MVNH.

As to the second **Althaus** factor, we must weigh the social utility of MVNH's conduct against the nature of the risk and foreseeability of harm. Breslin alleges that MVNH "mismanaged and/or reduced staffing levels below the level necessary to provide adequate care and supervision to its patients like Vincent[,]" resulting in the development of several pressure ulcers on his body. **See** Amended Complaint, at ¶¶ 31, 32. The need for prevention of nursing home mismanagement and understaffing is unquestionable, as is the importance of proper care and treatment of nursing home patients. MVNH provides health care services to patients such as Vincent, as well as the necessary staffing to perform those services. Imposing the non-delegable duties identified by the **Thompson** Court will not unduly hinder MVNH from performing its vital functions, and in fact, would operate to MVNH's benefit in protecting it from deficiencies in the care provided to its patients. Here, social utility favors imposing a duty of care on MVNH, as it was in the best position to ensure the non-negligent care of its patients, and thus, it possessed the ability to limit its liability by acting reasonably with respect to its patients. Thus, the second **Althaus** factor weighs in favor of imposing the non-delegable duties on MVNH.

The third **Althaus** factor, the nature of the risk imposed and foreseeability of the harm incurred, weighs heavily in favor of imposing the

non-delegable duties identified by the **Thompson** Court. Under this factor, we must determine whether MVNH either created or foresaw the possibility of harm to Vincent. **See Althaus**, 756 A.2d at 1170. Breslin alleges that, due to the failure of MVNH to properly staff its facility, Vincent received substandard health care, resulting in the formation of pressure ulcers on his body. **See** Amended Complaint, at ¶¶ 17, 18. The risk that substandard health care would be rendered to a sick, elderly and frail patient due to mismanagement and understaffing was a serious and foreseeable risk to MVNH. Therefore, the third **Althaus** factor weighs in favor of imposing the non-delegable duties on MVNH.

The fourth **Althaus** factor requires us to consider the consequence of imposing the non-delegable duties identified by the **Thompson** Court on MVNH. Breslin alleges that MVNH "had a duty to maintain and manage its facility with adequate staff and sufficient resources to ensure the timely recognition and proper treatment of medical conditions suffered by persons at its facility, such as Vincent []." Amended Complaint, at ¶ 52. We conclude that imposing the non-delegable duties identified by the **Thompson** Court on MVNH is not unduly onerous. Indeed, imposing such duties will not alter the relationship between MVNH and its patients in any manner, and will merely vindicate MVNH's existing obligations to provide proper care and treatment to its patients. Thus, the fourth **Althaus** factor weighs in favor of imposing the non-delegable duties on MVNH.

Finally, we conclude that the fifth *Althaus* factor, consideration of the overall public interest, favors imposing on MVNH the non-delegable duties identified by the *Thompson* Court. Breslin alleges that MVNH (1) "held itself out to the public as a competent and skillful health care provider[;]" (2) "through advertising, promotion and marketing, held itself out to the public, including Vincent [] and his family, as being able to provide competent medical care, rehabilitation, and nursing care to sick, elderly and frail individuals, including Vincent[;]" and (3) "held itself out to the public as capable of providing adequate care to persons like Vincent [], including but not limited to total health care, skin care, the provision of medication, medical care and treatment, nursing care, nutrition, hydration and hygiene." Amended Complaint, at ¶¶ 5, 8, 9. We conclude that the societal interest lies in in encouraging proper health care and treatment of nursing home residents. Thus, the fifth *Althaus* factor weighs in favor of imposing the non-delegable duties on MVNH.

Accepting as true the facts of the Amended Complaint and all inferences drawn therefrom, as we must, we conclude that Breslin has stated sufficient facts to establish that MVNH owed Vincent a duty of care under an *Althaus* analysis. *See Scampone*, 2017 PA Super 257 *43-44 (Pa. Super. 2017) (agreeing with the trial court's determination that the nursing home "had a non-delegable duty to render proper care to [Ms. Scampone] by virtue of its direct contractual relationship with her, the fact

that it was the licensed owner of the nursing home facility, and due to its direct rendition of care services to its residents."). Whether these facts will survive discovery and a motion for summary judgment, or whether Breslin can meet her burden before a jury and obtain recovery, is for another day. **See R.W. v. Manzek**, 888 A.2d 740, 751 (Pa. 2005). It was, however, error to dismiss her claim for corporate negligence on preliminary objections. **See id**. We therefore reverse the trial court's Order granting MVNH's preliminary objection with regard to Breslin's claim for corporate negligence based on the non-delegable duties identified by the **Thompson** Court.

As Breslin's second and third issues are related, we will address them together. In her second issue, Breslin contends that the trial court erred by sustaining MVNH's preliminary objection to Breslin's claim for vicarious liability. Brief for Appellant at 11-12. Breslin asserts that the trial court "appeared to base its ruling on old, inapplicable case law provided … by [MVNH] in its Preliminary Objections." **Id**. at 12. Specifically, Breslin points to the trial court's determination that Breslin had failed "to identify a single individual by name or title who would have treated [Vincent] during his year-long stay at [MVNH]," Brief for Appellant at 12 (citing Trial Court Opinion, 10/25/16, at 3), and claims that she was not required to identify individual or specific members of MVNH's staff in order for vicarious liability to attach. Brief for Appellant at 12 (citing **Estate of Denmark v. Williams**, 117 A.3d 300 (Pa. Super. 2015) and **Sokolsky**, **supra**). Breslin argues that

the Amended Complaint describes the specific dates of Vincent's admission at MVNH, during which multiple pressure ulcers formed on his body. Brief for Appellant at 14. Breslin contends that the remaining information regarding Vincent's care, and the names of the personnel who provided it, is in the sole possession of MVNH, and can be ascertained during discovery. *Id*. at 14-15.

In her third issue, Breslin contends that the Amended Complaint pleaded agency and negligence[4] with sufficient specificity pursuant to ***Sokolsky*** and ***Estate of Denmark***. ***Id***. at 20-21. Breslin points to the averments in the Amended Complaint which describe "doctors, nurses and persons providing health care, medical services, rehabilitation services, and assisted living/personal care/skilled nursing to Vincent [] during his admission at [MVNH]." ***Id***. at 21 (quoting Amended Complaint, ¶ 6). Breslin further points to the references in the Amended Complaint to "nurses, physicians, resident physicians, fellows, attending physicians, therapists, agents, servants, workers, employees, contractors,

---

[4] In its Opinion, the trial court determined that the Amended Complaint failed to plead negligence with sufficient specificity. ***See*** Trial Court Opinion, 10/25/16, at 5. For the reasons expressed in our discussion of Breslin's first issue, we conclude that her claim for corporate negligence was pleaded with sufficient specificity in the Amended Complaint. The trial court also determined that Breslin had failed to plead fraud with sufficient specificity, and struck all references thereto in the Amended Complaint. ***See id***. However, the trial court further indicated that Breslin had voluntarily agreed to strike the references to fraud from the Amended Complaint. ***See id***. at 4. Breslin makes no argument regarding the fraud allegations in her brief. Accordingly, we need not address those allegations.

subcontractors, and/or staff, all of whom were acting within the course and scope of their employment and under the direct and exclusive control of [MVNH]." *Id*. (quoting Amended Complaint, ¶ 60). Breslin also claims that the Amended Complaint "describes the specific dates during which [MVNH] exercised 'complete and exclusive control over [Vincent's] medical care,' and during which multiple pressure ulcers formed on [Vincent's] body." Brief for Appellant at 22 (quoting Amended Complaint, ¶¶ 11, 13, 14, 15, 20, 22). Breslin argues that the names of the individuals who provided care to Vincent are in the sole possession of MVNH, and can be ascertained through discovery. Brief for Appellant at 22.

In *Scampone*, our Supreme Court explained the difference between direct and vicarious liability as follows:

> To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternatively. Liability for negligent injury is direct when the plaintiff seeks to hold the defendant responsible for harm the defendant caused by the breach of duty owing directly to the plaintiff. By comparison, vicarious liability is a policy[-]based allocation of risk. Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that [it] possibly can to prevent it. Once the requisite relationship (*i.e.*, employment, agency) is demonstrated, the innocent victim has recourse against the principal, even if the ultimately responsible agent is unavailable or lacks the availability to pay.

*Scampone*, 57 A.3d at 597 (citations and internal quotation marks omitted); *see also Hall v*. *Episcopal Long Term Care*, 54 A.3d 381, 402

- 14 -

(Pa. Super. 2012). Accordingly, in order to hold an employer vicariously liable for the negligent acts of its employee, these acts must be "committed during the course of and within the scope of the employment." *Estate of Denmark*, 117 A.3d at 306 (citations omitted).

However, in *Sokolsky*, this Court concluded that it is not necessary for a plaintiff to establish a right to recover on a claim for vicarious liability based upon the negligence of a specifically named employee. *See Sokolsky*, 93 A.3d at 866 (concluding that the trial court erred by ruling that the plaintiff could not establish her right to recovery on her vicarious liability claim solely because she did not base that claim on an individual staff member's actions); *id*. (stating that "[s]imply because employees are unnamed within a complaint or referred to as a unit, *i.e.*, the staff, does not preclude one's claim against their employer under vicarious liability if the employees acted negligently during the course and within the scope of their employment."); *see also Estate of Denmark*, 117 A.3d at 307 (concluding that, "when read in the context of the allegations of the amended complaint, [plaintiff's] references to [']nursing staff, attending physicians and other attending personnel['] and [']agents, servants, or employees['] were not lacking in sufficient specificity and did not fail to plead a cause of action against the [hospital] entities for vicarious liability.").

Here, the trial court determined that Breslin "is required to identify by name or appropriate description each professional who was allegedly

negligent in treating [Vincent] during his stay at [MVNH]," and that Breslin had "failed to set forth facts adequate to state a claim for vicarious liability against [MVNH]." Trial Court Opinion, 10/25/16, at 4. The trial court further determined that the Amended Complaint "merely and generally maintains that [MVNH] acted through its agents, employees, contractors, staff subcontractors, and/or representatives, and … fails to specify with the required definiteness the individuals whose negligence is being attributed to [MVNH]." *Id*. at 5.

Based on our review, we conclude that the Amended Complaint properly set forth the material allegations of negligence upon which Breslin's claim for vicarious liability against MVNH was based, including Vincent's inability to care for himself, his complete reliance upon the staff of MVNH "to provide all of his medical care, daily care, and personal needs[,]" and that, while under the care of MVNH's staff, Vincent developed several pressure ulcers on his body. *See* Amended Complaint, ¶¶ 17, 19. While Breslin did not identify by name the nurses, doctors or other staff allegedly responsible, the names of those who performed services in connection with Vincent's care are either known to MVNH, or could be ascertained during discovery. *See Estate of Denmark*, 117 A.3d at 307. When read in the context of the allegations of the Amended Complaint, Breslin's references to "nurses, physicians, resident physicians, fellows, attending physicians, therapists, agents, servants, workers, employees, contractors, subcontractors, and/or

staff" were not lacking in sufficient specificity, and pled a cause of action against MVNH for vicarious liability. *See id*. Thus, we reverse the trial court's Order granting MVNH's preliminary objections with regard to (1) Breslin's claim for vicarious liability; and (2) insufficient specificity.

In her fourth issue, Breslin contends that the trial court erred by sustaining MVNH's preliminary objection regarding "scandalous and impertinent" matter in the Amended Complaint. Brief for Appellant at 15. Breslin asserts that each of the factual allegations deemed by the trial court to be scandalous and impertinent pertained to either (1) "decri[ptions of] the injuries that occurred [to Vincent] in terms used by Medicare[;]" or (2) "allegations indicating that [MVNH] operated its facility in a way to maximize profits over patient care." *Id*. at 15-16. Breslin claims that the trial court did not provide any basis for sustaining MVNH's preliminary objections related to scandalous and impertinent matter. *Id*. at 16. Breslin contends that the allegations in question were both material and appropriate to the claims asserted, and caused no prejudice to MVNH. *Id*. at 17. Specifically, Breslin asserts that "proof as to why [MVNH] was content to provide a deplorable level of care to one of its patients—because it valued maximizing profits over providing patient care—is both material to proving [Breslin's] claims and appropriate for doing so." *Id*. Breslin claims that these allegations are especially material and appropriate to her claim for punitive damages. *Id*.

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides for preliminary objections to be filed when pleadings include a scandalous or impertinent matter. In order to be scandalous or impertinent, "the allegation must be immaterial and inappropriate to the proof of the cause of action." **Common Cause/Pennsylvania v. Commonwealth**, 710 A.2d 108, 115 (Pa. Cmwth. 1998). The right to strike an impertinent matter, however, "should be sparingly exercised and only when a party can affirmatively show prejudice." **Commonwealth Dep't of Envtl. Res. v. Hartford Accident and Indem. Co.**, 396 A.2d 885, 888 (Pa. 1979).

Here, the trial court struck as "scandalous or impertinent" the allegations of the Amended Complaint in which Breslin claimed that pressure ulcers are "never" events, or events which do not occur in the absence of substandard medical care. **See** Trial Court Opinion, 10/25/16, at 4 (referencing Amended Complaint, ¶¶ 10, 37, 54(o), and 71(g)). The trial court also struck as "scandalous or impertinent" the allegations of the Amended Complaint in which Breslin claimed that MVNH had operated its facility "'to maximize profits and/or excess revenues' to the peril of facility residents." **See** Trial Court Opinion, 10/25/16, at 4 (referencing Amended Complaint, ¶¶ 30, 31, 54(q), 71(c) and 71(i)).

Based on our review, we cannot say that the allegations in question are "immaterial and inappropriate" to Breslin's claims. **See Common Cause/Pennsylvania**, 710 A.2d at 115. Nor has MVNH affirmatively shown

any prejudice resulting from these allegations. *See **Hartford Accident and Indem. Co.***, 396 A.2d at 888. Indeed, the references that the trial court struck may bear upon MVNH's non-delegable duties, as identified by the ***Thompson*** Court, to select and retain competent physicians; oversee all persons who practice medicine within its walls; formulate, adopt, and enforce adequate rules and policies to ensure quality patient care; observe, supervise, or control the patient's treatment approved by multiple physicians; apply and enforce its consultation and monitoring procedures; and ensure the patient's safety and well-being while at the hospital. *See **Thompson***, 591 A.2d at 705, 707. Accordingly, we reverse the trial court's Order sustaining MVNH's preliminary objection regarding scandalous and impertinent matter.

In her final issue, Breslin contends that the Amended Complaint pled sufficient facts to maintain a claim for punitive damages. Brief for Appellant at 18. Breslin asserts that the Amended Complaint includes allegations

> [MVNH] "affirmatively chose to operate its facility so as to maximize profits and/or excess revenues at the expense of the care required to be provided to its patients, including Vincent …," and that "in their effort to maximize profits, [MVNH] negligently, intentionally and recklessly mismanaged and/or reduced staffing levels below the level necessary to provide adequate care and supervision of its patients, including Vincent …."

*Id*. at 19-20. Breslin claims that the Amended Complaint is "replete with allegations of willful or wanton conduct and reckless indifference to the

rights of others on the part of [MVNH,]" and that Breslin has "alleged more than enough facts to support [a] claim[] for punitive damages." *Id*.

Here, Breslin alleges that MVNH, motivated by a desire to increase profits, knowingly mismanaged and/or reduced staffing levels below the level needed to provide adequate care and supervision to its patients, including Vincent. *See* Amended Complaint, ¶¶ 31, 32. Breslin has averred facts that establish MVNH knew, or should have known, its understaffing "created recklessly high patient-to-staff ratios, including high patient[-]to [-]nurse ratios." *Id*., ¶ 36. This Court cannot say with certainty that, upon the facts averred, no reasonable inference from those facts supports a punitive damages award. Accordingly, we reverse the trial court's Order sustaining MVNH's preliminary objection to Breslin's claim for punitive damages.

In sum, the facts averred in the Amended Complaint sufficiently set forth causes of action against MVNH for corporate negligence and vicarious liability pursuant to Pennsylvania law. Accordingly, we affirm the trial court's Order as it relates to the references to fraud in the Amended Complaint, which Breslin voluntarily agreed to strike, and reverse the remainder of the Order as it relates to the other preliminary objections filed by MVNH.

Order affirmed in part, reversed in part; case remanded for further proceedings. Superior Court jurisdiction relinquished.

- 20 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2017